UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|   |   |   |
|---|---|---|
| TODD C.,[1] | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Case No. 4:19-CV-1811 |
| ANDREW SAUL,[2] Commissioner of Social Security, | § § § | |
| *Defendant.* | § § § | |

## <u>MEMORANDUM & ORDER</u>

Plaintiff Todd C. filed this suit seeking judicial review of the denial of disability insurance benefits under Title II of the Social Security Act ("the Act"). ECF No. 1. The Parties consented to have this Court conduct all proceedings in this matter pursuant to 28 U.S.C. § 636(c) and filed for cross-motions for summary judgment, ECF Nos. 13, 14. Based on the briefing and the record, the Court determines that Plaintiff's motion for summary judgment should be denied and Defendant's motion for summary judgment should be granted.

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] Andrew Saul has been automatically substituted for the previously named defendant in this matter pursuant to Federal Rule of Civil Procedure 25(d) and the last sentence of 42 U.S.C. § 405(g).

# I.      BACKGROUND

Plaintiff is 50 years old, R. 364,[3] with a bachelor's degree in economics and an MBA. R. 180, 221. Plaintiff worked as a certified public accountant and as a professional consultant, R. 161, 204, 402–03, and has not worked since September 24, 2014, due to his health. R. 211–39, 364.

Plaintiff claims to suffer from upper quadrant abdominal pain, which began in the Spring of 2012. R. 34. Plaintiff states the pain became severe after he underwent a cholecystectomy in 2014 with minimal relief. R. 34. After the pain spread to both sides, Dr. Lehman, a gastroenterologist, diagnosed Plaintiff with sphincter of ODDI dysfunction ("SOD"). R. 1356. Dr. Lehman performed a dual sphincterectomy wherein he cut part of the sphincter of ODDI valve to reduce the pressure. R. 1039, 1208, 1634. Dr. Lehman reported, however, that the surgeries did not provide much pain relief. R. 2180. In 2016, Dr. Yeo performed two additional surgeries, a transduodenal bile duct sphincteroplasty and a transduodenal pancreas duct septoplasty. R. 1627–31, 1635–38, 1642–47.

Following these surgeries, Plaintiff claimed he continued to experience severe abdominal pain. R. 1868. In May 2016, Plaintiff met with Dr. Catalano, who diagnosed Plaintiff's pain as intercostal neuralgia. R. 24, 2267, 2596. To treat the pain, Plaintiff underwent several procedures, including a spinal cord stimulator, but

---

[3] "R." citations refer to the electronically filed administrative record, ECF Nos. 7, 8, and 9.

claimed none permanently alleviated his pain. R. 1396, 2555. When his pain was not resolved, Plaintiff continued to see Dr. Uzodinma, a pain specialist, every month for treatments, R. 24, 33–39, 47–59, 73–76, 81–86, 2118–26, 2603, including medication and radiofrequency ablation. R. 34, 2603–04. Plaintiff also sought treatment from Dr. Redko, a pain management specialist, who regularly injected Plaintiff with shots. R. 2647–51, 2756–60, 2770, 2783, 2786.

On November 25, 2015, Plaintiff filed his application for disability insurance benefits and supplemental security income under Title II of the Act based on his SOD. R. 211, 364-65.[4] According to Plaintiff, this impairment resulted in nerve pain and severe fatigue, preventing him from being able to work full time. R. 181–86. Plaintiff submitted an updated medical record, indicating that the primary source of his pain was intercostal neuralgia. R. 2595. Plaintiff also stated that fatty liver disease and sleep apnea contributed to his pain and fatigue. R. 2595. The Commissioner denied his claims. R. 154, 240–43. Plaintiff requested reconsideration, and the Commissioner again denied his claims. R. 154, 250–54.

Pursuant to Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ"). R. 154–210. An attorney represented Plaintiff at the hearing.

---

[4] The relevant time period is September 24, 2014—Plaintiff's alleged onset date—through December 31, 2019—Plaintiff's last insured date. R. 378. The Court will consider medical evidence outside this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Williams v. Colvin*, 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000).

R. 176. Plaintiff and a vocational expert testified at the hearing. *Id*. The ALJ issued a decision denying Plaintiff's request for benefits.[5] R. 151–70. Plaintiff requested that the Appeals Council review the ALJ's decision, but the Appeals Council denied his request for review. R. 1–3.

Plaintiff filed this civil action, ECF No. 1, challenging the ALJ's analysis and seeking remand. Pl.'s MSJ, ECF No. 13. Defendant opposes Plaintiff's motion, arguing that the ALJ did not commit any reversible error, and that the ALJ's findings were proper and supported by substantial evidence. Def.'s MSJ, ECF No. 14.

## II. STANDARD OF REVIEW

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a

---

[5] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ determined Plaintiff was not disabled at Step Four. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date through his date last insured. (20 C.F.R. 404.1571 *et seq.*). R. 157. At step two, the ALJ found that Plaintiff has the following severe impairment: intercostal neuralgia (20 C.F.R. § 404.1520(c)). R. 157. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526). R. 157. The ALJ found that Plaintiff has the Residual Functional Capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(b). He can occasionally lift and carry 10 pounds and frequently 5 pounds; stand and walk 4 of 8 hours each, and sit 6 of 8 hours for a full 8 hour day with the option to change position between sitting and standing at will; has unlimited push/pull and gross/fine dexterity except for occasional reaching and lifting overhead, bilaterally, and occasional pushing and pulling with lower extremities, bilaterally; occasionally climb stairs, but not ladders, ropes, scaffolds, or running; occasionally bend, stoop, crouch, crawl, balance, twist and squat. R. 157. In addition, the ALJ found Plaintiff could occasionally be exposed to heights, dangerous machinery, and uneven surfaces. R. 157. The ALJ also found no mental limitations. R. 157. At step four, the ALJ determined that, through the date last insured, Plaintiff could perform all past relevant work (20 C.F.R. § 404.1565). R. 161. Because Plaintiff could perform all past relevant work, the ALJ found Plaintiff was not disabled. R. 161–62.

4

party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing. The findings of the Commissioner … as to any facts, if supported by substantial evidence, shall be conclusive[.]

*Id*.

Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id*.; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

"The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Roeber v. Berryhill*, No. 17-CV-01931, 2018 WL 3745674, at *3 (S.D. Tex. Aug. 7, 2018) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id*. (quotations omitted). The "substantial evidence" standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823.

## III. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT.

Plaintiff raises three issues. First, Plaintiff challenges the ALJ's step two analysis because he failed to find Plaintiff's SOD to be severe. ECF No. 13 at 3–6. ECF No. 13 at 3–6. Next, Plaintiff contends that the ALJ improperly evaluated the medical opinions evidence of record. *Id*. at 6–11. Finally, Plaintiff argues the ALJ erred in conducting his RFC determination and finding that Plaintiff can perform the full range of sedentary work. *Id*. at 11–13. Defendant argues that the ALJ committed no reversible error at step two and properly conducted his RFC analysis. ECF No. 14 at 4–11.

## A. The ALJ Erred At Step Two But Did Not Prejudice Plaintiff.

A claimant bears the burden of proving that he or she suffers from a disability; however, the mere presence of an impairment is not enough to establish that one is suffering from a disability. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) Rather, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir.2000)). Under the statute, an impairment must be "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Furthermore, an individual is "under a disability, only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." *Id.* § 423(d)(2)(A).

"At step two of the disability analysis, the ALJ considers whether the claimant has a medically determinable impairment or combination of impairments that is severe." *Foster v. Astrue*, No. H-08-2843, 2011 WL 5509475, *11 (S.D. Tex. Nov.

10, 2011) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).[6] "A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* (citing § 404.1520(c)). An impairment is "not severe" only if it does not impose any interference on the ability to perform work activities. *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).[7] Therefore, the step-two showing requires Plaintiff only to make a "*de minimis* showing." *Salmond*, 892 F.2d at 817 (citing *Anthony*, 954 F.2d 293 n.5).[8]

Thus, Plaintiff has the burden of proving that his medical condition qualifies as severe. *See Stone v. Heckler,* 752 F.2d 1099, 1105 (5th Cir. 1985). Proving severity results in a two-step process: the durational requirement and the severity requirement. *Id.* For the durational requirement, "a claimant need only show that an alleged impairment has lasted or can be expected to last for the twelve-month

---

[6] "The claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy." *Id.* Once the Commissioner makes that showing, the burden shifts back to the claimant to rebut the finding. *Id*

[7] In the Fifth Circuit, "[a]n impairment can be considered as not severe *only if* it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Salmond v. Berryhill*, 892 F.2d 812, 817 (5th Cir. 2018) (citing *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (emphasis added by *Salmond* court)). "Restated an impairment is severe if it is anything more than a 'slight abnormality' that 'would not be expected to interfere' with a claimant's ability to work." *Id*.

[8] Moreover, the ALJ's failure to make a severity finding at step two is not a basis for remand where the AJL proceeded to later steps of the five-step analysis. *Herrera v. Comm'r*, 406 Fed. App'x 899, 903 (5th Cir. 2010) (per curiam) (collecting cases); *see Foster,* 2011 WL 5509475, at *14-19 (analyzing when remand is appropriate for step two error in severity finding).

period…" not that the impairment was itself severe for the entirety of the twelve months. *Craig v. Berryhill*, No. 17-CV-1715, 2019 WL 1387696, at *5 (M.D. La., Mar. 27, 2019) (quoting *Singletary v. Bowen*, 798 F.2d 818, 821 (5th Cir. 1986)).

### 1. The ALJ erred because he did not find Plaintiff's SOD to be severe.

Plaintiff asserts that the SOD occurred because of his gallbladder removal surgery in July 2014. ECF No. 13 at 5. In his step two analysis, the ALJ stated, "The [Plaintiff's] SOD was found to be unrelated to [his] chronic pain. It was at best an incidental finding and the sphincterotomy procedures involving invasive abdominal surgery in April 2015 and January 2016 corrected the problem within 12 months." R. 157. The ALJ found that the impairment failed to meet the durational requirement. *Id.*

The ALJ's opinion, however, confuses the severity requirement. For an impairment to be severe, it must last for twelve months and be severe, but does not need to be severe for the entirety of those twelve months. *Craig*, 2019 WL 1387696, at *5 (remanding when ALJ determined Plaintiff's bilateral carpal tunnel syndrome failed the duration requirement when it was not severe for the full twelve months). The ALJ's imposition of the durational requirement on the severity of the impairment is the incorrect legal standard. *Id.*

Social Security guidelines state that evidence of laboratory findings, treatment, doctor's visitations, and symptoms all indicate a continuous duration for

an impairment. SSR 93-52, 1982 WL 31376, at *3. The record indicates that, after the first sphincterotomy Dr. Lehman performed in April 2015, the problem was not resolved. R. 2158.[9] Prior to his appointment with Dr. Wolf in January 2016, Plaintiff had anesthetic shots from Dr. Uzodinma and a neurolytic celiac plexus block from Dr. Fuke to alleviate his symptoms. R. 2064, 2126. Plaintiff made more than a *de minimis* showing that his SOD continued from the onset date in July 2014 through January 2016, which is more than a year and met the durational requirement. *Singletary*, 798 F.2d at 821(finding continuous doctor's visits and hospitalizations indicators of the duration of an impairment). Therefore, the ALJ erred in finding that the SOD failed to meet the durational requirement.

Similarly, Plaintiff presented sufficient evidence to establish the "severity" requirement of his SOD impairment. In his step two analysis, the ALJ stated that the SOD would have no more than a minimal or slight limitation in the Plaintiff's functional ability. R. 157. While the medical record presents varying opinions[10] on

---

[9] In a visit with Dr. Yeo, who performed Plaintiff's transduodenal sphincteroplasty and septoplasty, Dr. Yeo observed that "the patient carries a diagnosis of SOD and he is very disabled and troubled by it. He is currently on what I would call 'polypharmacy,' and this has clearly impacted his life." R. 2158 (10/29/15). When Plaintiff began seeing Dr. Uzodinma, Dr. Uzodinma noted that Plaintiff underwent procedures for his SOD but without prolonged benefit. R. 2127 (12/4/15).

[10] Dr. Ertan, an examining physician, opined that "his [abdominal] pain and hepatomegaly are likely due to fatty liver. Sphincter of ODDI dysfunction is an unlikely possibility." R. 987 (1/29/15). Dr. Swamy, a reviewing physician, opined that the SOD was not the cause of his abdominal pain. R. 2696–2704 (8/18/17).

the cause of his pain, Plaintiff provided sufficient evidence to meet the low threshold to find that his SOD exceeded a "slight abnormality." Specifically, the record contains evidence documenting Plaintiff's pain and medical opinions confirming the SOD as the cause of his pain.[11] Furthermore, the record documents numerous procedures Plaintiff underwent to treat this impairment.[12] Thus, Plaintiff has satisfied this *de minimus* burden, and the ALJ erred in not finding Plaintiff's SOD to be a severe impairment.

### 2. The ALJ's error did not prejudice Plaintiff.

Procedural perfection in administrative proceedings is not required. *Rollins v. Astrue*, 464 F App'x 353, 358 (5th Cir. 2012) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)). The court will not vacate a judgment unless the "substantial rights of a party have been affected." *Id.* The ALJ's RFC calculation compensated for the ALJ's error in not finding Plaintiff's SOD to be severe. Specifically, the ALJ reviewed the medical evidence and considered the limitations

---

[11] R.1356 (On 5/11/15, Dr. Lehman diagnosing Plaintiff's SOD based on Plaintiff's pain, fatigue, and diminished appetite); R. 2568 (On 7/20/16, Dr. Uzodinma reporting Plaintiff's chronic pain due to potentially SOD.); R. 2647 (On 11/1/17, Dr. Redko discussing how Plaintiff's sphincter ODDI dysfunction continued after his first surgery).

[12] R. 2536 (On 5/20/16, Dr. Uzodinma performing right intercostal nerve blocks to alleviate pain, discussing procedure as a "therapeutic" measure for SOD); R. 34 (On 4/25/17, Dr. Uzodinma listing procedures Plaintiff underwent to help his ODDI dysfunction without prolonged benefit including medication, botox injections, sphincterotomy, splanchnic nerve RFTC, open celiac plexus blocks, and bile / pancreatic duct sphincteroplasty and septoplasty); R. 2651 (On 10/2/17, Dr. Redko discussing how Plaintiff underwent jejunal surgery for his SOD to no avail).

and symptoms Plaintiff claimed he experienced from his SOD. R. 158–61. In particular, the ALJ discussed Plaintiff's chronic abdominal pain, aggravating factors of Plaintiff's pain, and Plaintiff's ability to perform daily activities with these limitations.[13] The ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and evidence of his daily living activities. R. 160. Therefore, it is not probable that the ALJ would have arrived at a different conclusion had he considered the SOD to be severe in step two. *Hammond v. Barnhart*, 124 F. App'x 847, 854 (5th Cir. 2005) (affirming ALJ's decision when it was not probable a different result would have occurred but for the ALJ's error).

Furthermore, even though the ALJ erred in failing to find Plaintiff's SOD to be a severe impairment, the ALJ proceeded beyond step two, finding Plaintiff was not disabled at step four. R. 161. Fifth Circuit case law holds that such action may constitute harmless error in cases where the ALJ proceeded past step two. *Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 903 (5th Cir. 2010) (noting the ALJ's failure to make a severity finding at step two was not a basis for remand where the finding would not affect his step five analysis) (citing *Adams v. Bowen*, 833 F.2d

---

[13] In his RFC analysis, the ALJ noted that, "[a]t the hearing the claimant testified to chronic, right-sided abdominal pain that feels like "a vise," with referred numbness to the right arm and leg. He explained that his pancreatic duct and sphincter valve surgeries did not help him. He said he experiences the most pain when sitting straight up and that standing is preferable to sitting." R. 158.

509, 512 (5th Cir. 1987)). The ALJ considered the limitations of the SOD in arriving at the RFC and would not have reached a different conclusion absent this error. *Cagle v. Colvin*, No. H-12-0296, 2013 WL 2105473, at *8 (S.D. Tex. May 14, 2013) ("Because the ALJ progressed beyond step two and considered all limitations supported by the record, to the extent there was a step two error it was harmless."). Therefore, the ALJ's error was harmless error.

## B. The ALJ Did Not Commit Reversible Error When Weighing the Medical Opinions.

### 1. The ALJ gave great weight to Dr. Redko and Dr. Uzodinma.

Plaintiff argues that the ALJ improperly evaluated the medical opinion because he failed to consider the section 404 factors. ECF No. 13 at 3–6. Plaintiff claims the ALJ instead relied on outdated opinions of state agency medical consultants and his own lay interpretation of the medical records, thus preventing the RFC from reflecting Plaintiff's worsening health conditions. *Id.* at 6. The Court disagrees with Plaintiff and finds that the ALJ properly conducted his analysis.

As Plaintiff's abdominal pain persisted, he began seeking treatment from Dr. Uzodinma, an interventional pain medicine specialist in 2015. R. 2602–04 (Plaintiff's summary of his treatment history). Starting in December 2015, Plaintiff saw Dr. Uzodinma regularly through the relevant time frame.[14] Since May 2016,

---

[14] R. 2126 (12/4/15); R. 2122 (1/7/16); R. 2118 (2/12/16); R. 2593 (2/12/16); R. 2151 (2/15/16); R. 2536 (5/20/16); R. 2568 (7/19/16); R. 2555 (9/27/16); R. 2461 (10/25/16); R. 2532 (12/2/16);

Dr. Uzodinma performed three procedures aimed at treating his abdominal intercostal nerve entrapment and/or intercostal neuralgia. R. 7 (Dr. Uzodinma's summary of treatment history). These procedures include several injections of a combination steroid and local anesthetic, a radiofrequency ablation of several right-side intercostal nerves, and finally additional nerve blocks. R. 7. Dr. Uzodinma stated that these treatments offered "some benefit," which lasted "for approximately a month" but did not relieve all of Plaintiff's pain. R. 7.

Dr. Uzodinma additionally prescribed several different medications during the treatment history. R. 2568 (7/19/16). Dr. Uzodinma saw improvement with the use of medication noting, "patient has reported improved functionality, quality of life, and analgesic control with current opioid medication therapy," and "[w]ithout these medications, Patient will likely suffer deterioration and functionality and worsening pain." *Id.* Despite the improvement with medication, Dr. Uzodinma opined that Plaintiff's ailments cause "significant persistent disability and reduction of quality of life and functional status." R. 2555 (9/27/16). For this reason, Dr. Uzodinma recommended that Plaintiff obtain a spinal cord stimulator, but Plaintiff's insurance initially denied his application.[15] Once Plaintiff obtained a spinal cord stimulator in

R. 86 (12/20/16); R. 2538 (1/24/17); R. 81 (1/24/17); R. 73 (2/21/17); R. 56 (2/21/17); R. 47 (3/31/17); R. 24 (3/31/17); R. 33 (4/24/17); R. 2741 (6/6/17); R. 2736 (7/11/17); R. 2726 (9/19/17).

[15]  R. 2555 (On 9/27/16, "[Plaintiff] continues active treatments including application for spinal cord stimulator trial to improve his functional status and ability to continue gainful employment.");

March 2017, ECF No. 13 at 9, Dr. Uzodinma noted Plaintiff's improvement with the device.[16] As Plaintiff began improving with the device, Plaintiff reduced his reliance on medications.[17]

To alleviate his pain, Plaintiff also sought treatment from Dr. Redko, a pain management specialist. R. 19. Dr. Redko treated Plaintiff for his abdominal pain by monitoring anesthesiologist care, IV administration, intercostal blocks, and celiac plexus and splanchnic nerve blocks.[18] Dr. Redko's noted that these multiple procedures failed to resolve Plaintiff's chronic pain until his spinal cord stimulator.[19] Prior to the operation, Dr. Redko observed that, "[Plaintiff] cannot work or sit at the desk" and "[h]e has a hard time sitting or lying on his right side. He is fairly

---

R. 2538 (On 1/24/17, "I have performed peer to peer with Aetna physician, Dr. Jeffrey Ottmers, and waiting reply regarding approval of spinal cord stimulator trial.").

[16] R. 2741 (On 6/6/17, "[Plaintiff] reports suboptimal coverage [with] permanent implant"); R. 2726–28 (On 9/19/17, "[Plaintiff] reports he is getting good coverage by his Spinal Cord Stimulator").

[17] R. 2726 (On 9/19/17, Dr. Uzodinma reported Plaintiff had discontinued Lorazepam and other prescribed medications due to improvements with the spinal cord stimulator).

[18] R. 2651 (10/2/17); R. 2786 (10/2/17); R. 2783 (10/23/17); R. 2649 (10/23/17); R. 501 (11/1/17); R. 2647 (11/1/17); R. 2776 (1/15/18); R. 2775 (1/22/18); R. 2770 (2/22/18); R. 19 (2/28/18); R. 2767 (3/1/18); R. 2764 (3/8/18); R. 2760 (3/22/18); R. 2756 (3/29/18).

[19] Dr. Redko noted that Plaintiff "did not improve with surgery," additionally underwent jejunal surgery "without improvement," several intercostal blocks were "inconclusive," splanchnic and celiac blocks "did not bring any improvement," and right 9-10 intercostal nerve brought "several weeks of numbness and some partial improvement." R. 2756 (3/29/18). Dr. Redko also noted that Plaintiff's condition was "chronic and ongoing." *Id.*

asymptomatic standing, lying on his back."[20] However, after the addition of the spinal cord stimulator, Dr. Redko observed "some partial improvement."[21] As Plaintiff continued to improve with the use of the spinal cord stimulator, Dr. Redko noted that Plaintiff was "able to work with current treatment plan" and was "improving on treatment." R. 2778.[22]

The ALJ afforded "great weight" to both the opinions of Dr. Uzodinma and Dr. Redko. R. 159–60. When reviewing Dr. Uzodinma's previous treatments, the ALJ noted that Dr. Uzodinma confirmed that Plaintiff's medications "had been helpful but were lessened or eliminated due to the stimulator." R. 159 (referencing 2726–28). The ALJ also observed that Plaintiff claimed to have "good pain coverage with the stimulator" so much so that he was able to "come off Ativan and gabapentin." R. 159. In affording "great weight" to the opinion of Dr. Uzodinma, the ALJ stated, "[f]rom a psychological aspect, Dr. Uzodinma noted normal affect, mood, behavior, thought content, and judgment." R. 160. The ALJ gave this opinion great weight because it "revealed no mental impairment." R. 160.[23]

---

[20] R. 2651 (10/1/17); R. 2786 (10/2/17); R. 2783 (10/23/17); R. 2779 (11/6/17); R. 2776 (1/15/18); R. 2773 (1/22/18); R. 2770 (2/22/18); R. 2767 (3/1/18); R. 2760 (3/22/18); R. 2756 (3/29/18); R. 2764 (4/16/18).

[21] R. 2786 (On 10/2/17, Dr. Redko noted Plaintiff experienced some partial improvement although Plaintiff could not sit or work at a desk).

[22] R. 2778 (11/6/17); R. 2776 (1/15/18); R. 2783 (4/16/18).

[23] While affording "great weight" to the opinion of Dr. Uzodinma, the ALJ also granted "great weight" to the opinion of Dr. Smith, a consulting psychologist who was responsible for assuring

Discussing Plaintiff's pain treatments, the ALJ again gave "great weight" to Dr. Redko's opinion, which the ALJ claimed revealed "a significant reduction in pain" enabling the claimant to work "fairly asymptomatic." R. 159–60. The ALJ noted that Dr. Redko's treatments, including the spinal cord stimulator and intercostal blocks, allowed Plaintiff to be "'fairly asymptomatic' standing or lying on his back." R. 159 (quoting Dr. Redko's report).

In addition to the two treating physicians, the ALJ gave "little weight" to the opinion of Dr. Stanfill, a vocational rehabilitation consultant who opined that Plaintiff was disabled based upon Plaintiff's treating doctor's statements. R 161.[24] In rejecting this opinion, the ALJ noted that Dr. Stanfill is a vocational counselor and not a medical doctor or psychologist, thus his opinion had little probative value concerning functional limitations imposed by Plaintiff's physical impairments. R. 161 (referencing R. 2329–30).

Instead, the ALJ gave "some weight" to the opinion of Dr. Swamy, a medical

Plaintiff's psychological aptitude for surgery. R. 1988. Similar to Dr. Uzodinma, Dr. Smith observed that Plaintiff was asymptomatic from a psychological perspective but also opined that Plaintiff could not walk, sit, or stand for long period of time due to his pain. R. 2640. The ALJ stated that he afforded both Dr. Uzodinma's and Dr. Smith's opinion great weight as they reveal "no mental impairment." R. 160.

[24] Dr. Stanfill opined that Plaintiff "has been totally disabled from past employment as a Senior Management Consultant or form any other occupation at any level of physical exertion for which he is trained and experienced, even on a part-time basis, from September of 2014 through the present date. This opinion is based upon the definition of disability cited above and [Plaintiff's] treating doctor's statements. It is further this consultant's opinion that this off work status will continue for the foreseeable future while [Plaintiff] pursues additional pain management interventions." R. 2329–30 (May 17, 2016).

consultant who conducted an RFC report. R. 161. Dr. Swamy's functional capacity examination denied any evidence of cognitive restrictions and found Plaintiff's pain to be "intermittent." R. 2696–2704. The ALJ only afforded Dr. Swamy some weight, however, as he found the record supported additional limitations considering Plaintiff's testimony and other medical documentation. R. 161. The ALJ also afforded "great weight" to the opinions of the state agency consultants, but found the evidence supports "additional limitations" considering Plaintiff's pain, even though the ALJ noted that Plaintiff's condition had improved. R. 161.

### 2. The ALJ properly weighed the evidence of the record.

The ALJ is the sole arbiter of the witnesses. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). As administrative factfinder, the ALJ is entitled to significant deference in deciding the appropriate weight to accord the various pieces of evidence in the record. *See Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

Social Security guidelines require adjudicators to consider the opinions of medical sources and apply the factors denoted in regulations when weighing the opinions. SSR 96-5p, 1996 WL 374183.[25] "These factors are: (1) the physician's length of treatment of the claimant; (2) the frequency of examination; (3) the nature and extent of the treatment relationship; (4) the extent to which the physician's

---

[25] "The Social Security Administration's ruling are not binding on this court, but they may be consulted when the statute at issue provides little guidance." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).

opinion is supported by the medical record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician." *Giles v. Astrue*, 433 F. App'x 241, 248 (5th Cir. 2011).

The ALJ must afford controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairment when it is well-supported by medical evidence and consistent with other evidence of record. 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2). However, the ALJ is free to reject the opinion of any physician when the "evidence supports a contrary conclusion," and a treating physician's opinion "may be assigned little or no weight when good cause is shown." *Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000) (emphasis in original) (remanding when ALJ failed to discuss why he gave more weight to non-treating physician's opinion). "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques or is otherwise unsupported by evidence." *Qualls v. Astru*, 339 F. App'x 461, 465 (5th Cir. 2009) (quoting *Newton*, 209 F.3d at 456). When an ALJ rejects the opinion of a treating physician, the Fifth Circuit has held that, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician

only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in § 404.1527." *Id*.

However, an "ALJ does not need to specifically enumerate § 404.1527(c)'s six factors when there is competing first-hand medical evidence *and* the ALJ as a factual matter finds that one doctor's opinion is more well-founded than another, or when the ALJ has weighed the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Romo v. Berryhill*, No. 17-CV-2163, 2018 WL 4146416, at *3 (S.D. Tex. Aug. 30, 2018) (quotations omitted) (emphasis added); *accord Walker v. Barnhart*, 158 F. App'x 534, 535 (5th Cir. 2005) (ALJ was not required to consider each *Newton* factor because the record contained competing first-hand medical evidence).

### a. The ALJ weighed the medical opinions in accordance with the section 404 factors.

Plaintiff argues that the ALJ failed to consider the section 404 factors in weighing the medical opinions. ECF No. 13 at 6–11. Plaintiff further contends that the ALJ was biased when weighing the evidence by disregarding the required factors. *Id*. at 7. To the contrary, the ALJ did a thorough analysis of the records consistent with the section 404 factors.

Plaintiff has an established treating relationship with both Dr. Redko and Dr. Uzodinma, both of whom examined Plaintiff on a regular basis for an extended

period—sufficient to create a longitudinal history of care. The ALJ afforded both medical opinions "great weight," finding that both opinions established Plaintiff's condition improved. R. 159–60. While affording great weight to Dr. Redko, the ALJ stated he did so because it "reveals a significant reduction in pain based on implanted stimulator to a reasonable, modest level enabling the claimant to work 'fairly asymptomatic.'" R. 160. Similarly, in giving "great weight" to Dr. Uzodinma's opinion, the ALJ noted that Dr. Uzodinma performed a spinal cord stimulator trial, which provided relief for Plaintiff's pain. R. 159. The ALJ also noted that Dr. Uzodinma noted normal affect, mood, behavior, thought content, and judgment—consistent with the record. *Id.*

Both treating physicians cited to Plaintiff's chronic abdominal pain throughout their treatment history.[26] However, upon receiving the spinal cord stimulator and subsequent adjustments in 2017, both Dr. Redko and Dr. Uzodinma observed improvements in Plaintiff's condition.[27] The ALJ found these medical

---

[26] Dr. Redko's notes: R. 2651 (10/2/17); R. 2786 (10/2/17); R. 2783 (10/23/17); R. 2649 (10/23/17); R. 501 (11/1/17); R. 2647 (11/1/17); R. 2776 (1/15/18); R. 2775 (1/22/18); R. 2770 (2/22/18); R. 19 (2/28/18); R. 2767 (3/1/18); R. 2764 (3/8/18); R. 2760 (3/22/18); R. 2756 (3/29/18).

Dr. Uzodinma's notes: R. 2126 (12/4/15); R. 2122 (1/7/16); R. 2118 (2/12/16); R. 2593 (2/12/16); R. 2151 (2/15/16); R. 2536 (5/20/16); R. 2568 (7/19/16); R. 2555 (9/27/16); R. 2461 (10/25/16); R. 2532 (12/2/16); R. 86 (12/20/16); R. 2538 (1/24/17); R. 81 (1/24/17); R. 73 (2/21/17); R. 56 (2/21/17); R. 47 (3/31 /17); R. 24 (3/31/17); R. 33 (4/24/17); R. 2741 (6/6/17); R. 2736 (7/11/17); R. 2726 (9/19/17).

[27] Shortly after the spinal cord stimulator trial, on 6/6/17, Dr. Uzodinma noted that "[Plaintiff] reports suboptimal coverage [with] permanent implant." R. 2741. A few months after treatment,

opinions to be consistent with both Plaintiff's testimony at the hearing as well as the

medical record. R. 159–60. The ALJ also found the treating physicians' conclusions

to be consistent with their records, observing how both Dr. Redko and Dr. Uzodinma

had overall unremarkable examinations of Plaintiff in their most recent visitations.[28]

Although *Newton* does not require the ALJ to recite each factor as a litany in every

case, it is imperative that the ALJ's discussion reflect an accurate understanding of

the factors. *Allen v. Saul*, N0. 4:19-CV-1575, 2020 WL 5412630, at *6 (S.D. Tex.

Sept. 9, 2020) (reversing when ALJ's determination for the factors was incorrect).

The ALJ's analysis, which afforded great weight to the treating physicians, reflects

an accurate understanding of the factors, examining the consistency of the opinion

---

on 9/19/17, Dr. Uzodinma noted that "[Plaintiff] reports he is getting good coverage by his Spinal Cord Stimulator." R. 2726–28.

On 10/2/17, Dr. Redko observed Plaintiff experienced some partial improvement although he maintained Plaintiff could not sit or work at a desk). R. 2786. Dr. Redko observed that due to Plaintiff's improvement from the spinal cord stimulator, Plaintiff was "able to work with current treatment plan" and was "improving on treatment." R. 2779 (11/6/17); R. 2776 (1/15/18); R. 2783 (4/16/18).

[28] The ALJ observed that in recent examinations, Dr. Redko noted normal alignment of the spine with adequate range of motion flexion extension and lateral rotation, normal range of motion in the upper and lower extremities, normal strength with no muscle atrophy or wasting throughout, and intact reflexes bilaterally in the upper and lower extremities. R. 160. Further, Dr. Redko conducted a body scan performed in February 2018 which revealed nothing. *Id.* (referencing R. 2770). The ALJ also observed that under Dr. Uzodinma's treatments, with the use of the spinal cord stimulator and medications, Plaintiff reported that he had good pain coverage and was able to come off Ativan and gabapentin. R. 159 (referencing R. 2726–28). Upon Dr. Uzodinma's recent examination of Plaintiff, Dr. Uzodinma noted Plaintiff's normal affect, mood, behavior, thought content, and judgment. R. 160 (referencing R. 2726–28). The ALJ noted that Dr. Uzodinma's observations were consistent with Dr. Swamy and Dr. Smith. R. 160 (referencing R. 1988, 2696–2704).

with the record and the consistency of the opinion with the physician's own medical records.

The rest of the ALJ's analysis similarly reflects an understanding of the factors. The ALJ granted little weight to the opinion of Dr. Stanfill, who opined "claimant was disabled from all work." R. 161 (referencing R. 2329–30). The ALJ discounted Dr. Stanfill's opinion because he is a vocational counselor and not a medical doctor, and therefore his opinion offered little probative value concerning functioning limitations. R. 161.

When discussing the opinion of Dr. Swamy, a medical consultant, the ALJ granted it some weight as it was somewhat supported by medical evidence and consistent with the record as a whole. *Id*. However, the ALJ found that considering Plaintiff's testimony and medical evidence that additional limitations were supported, more so than what Dr. Swamy opined. *Id.* Further, Dr. Swamy as a medical consultant did not have the established treatment relationship that Dr. Redko and Dr. Uzodinma had, whose opinions were afforded greater weight. The ALJ also noted that the state agency consultants found Plaintiff could perform at a light level of work, but determined that considering the evidence and Plaintiff's testimony, additional limitations were warranted. *Id.* Therefore, the ALJ reduced Plaintiff to a sedentary level of functioning as opposed to a light level. *Id*.

The ALJ's decision demonstrates that the section 404 factors were considered

when weighing the medical opinions of the record. In limiting Plaintiff to light work, the ALJ considered consistency of the opinions with the medical records, consistency with the record as a whole, the length of treatment of physicians, and the specialization of the physicians, reflecting an accurate understanding of the factors. Accordingly, the ALJ did not violate C.F.R. § 404.1527 because he considered the required factors in assigning weight to the medical opinions.

*b. The ALJ gave appropriate credibility to Plaintiff's testimony.*

Plaintiff additionally argues that the ALJ erred in conducting his RFC analysis because he disregarded Plaintiff's testimony. ECF No. 13 at 8–9. Specifically, Plaintiff alleges that the ALJ distorted his testimony to cherry-pick the evidence. *Id.* Plaintiff points to the ALJ's statement that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence." ECF No. 13 at 7 (quoting R. 157–58).

In conducting his analysis, the ALJ referenced Plaintiff's testimony and provided explanations when the ALJ found the testimony less credible. R. 157–58.[29]

---

[29] In making his RFC determination, the ALJ referenced Plaintiff's testimony concerning his current impairments, his pain level, his medications, his activities, as well as his estimate concerning his ability to do work. Although the ALJ found the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, he also found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 158. Additionally, the ALJ also found that Plaintiff's complaint of chronic pain was inconsistent with his testimony that he experienced significant pain relief such that he stopped taking medication following his injections and spinal cord stimulator. R. 159.

Furthermore, the ALJ incorporated Plaintiff's testimony concerning his activity level in restricting Plaintiff to sedentary work, noting additional limitations. R. 160.[30] Moreover, the ALJ was within his authority to weigh the credibility of the testimony of Plaintiff with the medical record. *Taylor* 706 F.3d at 602–03 ("The RFC determination is the sole responsibility of the ALJ.") (per curiam) (quoting *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)). The ALJ is permitted to consider the objective medical evidence over the subjective statements of Plaintiff. *Britton v. Saul*, 827 F. App'x 426, 431 (5th Cir. 2020) (affirming ALJ's decision and granting "great deference" to ALJ's evaluation of claimant's credibility when he afforded greater weight to medical opinions than claimant's testimony).

Plaintiff points to the ALJ's assessment that Plaintiff's pain with the spinal cord stimulator was "a modest '3'" in his decision. ECF No. 13 at 8 (referencing R. 158). Plaintiff argues that this statement was taken out of context and applied only when Plaintiff was lying down and using his spinal cord stimulator, not engaged in activities. ECF No. 13 at 8. However, at the hearing the ALJ asked Plaintiff, "[i]f

---

[30] The ALJ afforded greater limitations in his RFC determination than those provided by medical consultants. Specifically, Dr. Swamy limited the claimant to lifting, carrying, pushing and pulling up to 25 pounds occasionally and 15 pounds frequently; no limitations on sitting and standing, but allowed that Plaintiff should be able to change position between sitting and standing every 30 minutes. R. 161 (referencing R. 2703). But the ALJ limited Plaintiff to sedentary work, as opposed to light work, restricting Plaintiff to occasionally lift and carry 10 pounds and frequently 5 pounds; stand and walk 4 of 8 hours each and sit 6 of 8 hours for a full 8-hour day with the option to change position between sitting and standing at will. R. 157.

you just go around normally doing what you do and you got [the spinal cord stimulator] on, it's working during the day, where are you at?" to which Plaintiff responded "I would say it's a 3 now." R. 187. In addition to Plaintiff's testimony, at his recent examinations following the implantation of the spinal cord stimulator, Plaintiff often reported his pain level at a 3/10 or better.[31]

Plaintiff also claims that the ALJ distorted his testimony concerning his daily activities. ECF No. 13 at. 8. In particular, Plaintiff argues that the ALJ was incorrect in claiming that Plaintiff traveled frequently for leisure. *Id*. Plaintiff claims the ALJ also erred in stating that Plaintiff also currently attends UT football games. *Id*.

However, Plaintiff's testimony at the hearing supports the ALJ's statements. When asked if he had travelled anywhere in the last three years, Plaintiff responded that they had been to Colorado to visit Plaintiff's parents, Grand Cayman's in the last three years, and Austin a couple of times during the recent years to attend UT football games. R. 197. In the RFC analysis, the ALJ noted that Plaintiff testified to attending a week-long vacation in Colorado at his parents' condo, travelling to Grand Cayman Island with his wife and parents for a week's vacation, and going 3–4 times to the University of Texas Football games, where his wife is an alumnus. R. 158. Plaintiff's argument that "he *used* to go to football games," ECF No. 13 at

---

[31] R 2736 (7/11/17, reporting pain at "3/10"); R. 2731 (9/5/17, reporting pain at "1/10"); R. 2726 (9/19/17, reporting pain at "3/10").

8, is unsupported. Specifically, the ALJ asked Plaintiff at the hearing about any place he visited in the last three years. R. 198. Plaintiff responded that he and his family go to Austin a couple of times each year to attend University of Texas football games. R. 198–99. Plaintiff commented that he usually stays in the hotel room, but he did attend the first game of the season the previous year. R. 199. Accordingly, the ALJ's finding is consistent with the evidence of Plaintiff daily activities, including travelling and attending football games.

Finally, Plaintiff contends that the ALJ erred when he failed to give Plaintiff's testimony appropriate credibility. ECF No. 13 at 6–7. A factfinder's evaluation of the credibility of subjective complains is entitled to judicial deference if supported by substantial evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (affirming ALJ's decision to afford greater weight to objective evidence over Plaintiff's subjective complaints). However, an ALJ's unfavorable credibility evaluation of a plaintiff's complaints of pain will not be upheld when the uncontroverted medical evidence shows a basis for his complaints "unless the ALJ weighs the objective medical evidence and assigns articulated reasons for discrediting claimant's subjective complaints of pain." *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989) (quoting *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988) (per curiam)).

The ALJ weighed the medical evidence and Plaintiff's testimony to find that

Plaintiff's pain had substantially improved with the use of the spinal cord stimulator.[32] Additionally, the ALJ noted that Plaintiff's testimony was contradictory, stating that his chronic, right-sided abdominal pain feels like "a vise," while also testifying that his pain was reduced to a modest "3" level. R. 158. For these reasons, the ALJ found that Plaintiff's statements concerning intensity, persistence, and limiting effects were "not entirely consistent with the medical evidence and other evidence in the record." R. 158–59.

Accordingly, substantial evidence supports the ALJ's assessment of the credibility of Plaintiff's testimony.

### 3. The ALJ's misstatements of the record were harmless error.

Plaintiff argues that the ALJ erred because he misstated the record, which prejudiced Plaintiff. Plaintiff bears the burden of proof to show that an ALJ's error affected his substantial rights. *Audler v. Astrue*, 501 F.3d 446, 449 (5th Cir. 2007) (reversing when Plaintiff met burden to show that ALJ's error of not properly explaining the decision affected her substantial rights). An ALJ need not discuss every piece of evidence, but it is his responsibility to "develop facts fully and fairly relating to applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557; *Jefferson*

---

[32] The ALJ observed Plaintiff testified that he no longer takes pain medication, and after the implantation of a spinal cord stimulator, his pain level is reduced to a modest '3' level when used. R. 158. Similarly, the ALJ found that the most recent medical records showed normal examinations of Plaintiff and improved pain management from his treating physicians. R. 158–60.

*v. Barnhart,* 356 F.Supp.2d 663, 675 (S.D. Tex. 2004) ("Although the ALJ need not discuss every piece of evidence, he may not ignore evidence that does not support his decision.").

Plaintiff argues the ALJ cherry-picked the evidence when he omitted Dr. Redko's observation that Plaintiff "cannot sit or work at a desk." ECF No. 13 at 10. An ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it. *Hammond*, 124 F. App'x at 851 (holding that an ALJ's failure to articulate the weight given to state agency medical consultants was harmless error). Dr. Redko's notation that Plaintiff cannot sit or work at a desk appears in every examination under "Subjective."[33] However, following the addition of the spinal cord stimulator, Dr. Redko included additional notes in the Subjective section, stating that pain was now "intermittently present," the recent intercostal block provided "near complete pain relief," and Plaintiff could now "work with treatment plan." R. 2773 (1/22/18). Additionally, Dr. Redko described Plaintiff as "improving on treatment." R. 2764 (4/6/18). While the ALJ did not include this statement, the ALJ found Dr. Redko's treatment history to overall reflect that Plaintiff experienced significant improvement with recent medications and the spinal cord stimulator. R. 159–60. Dr. Redko's notes support this assertion.

---

[33] R. 2651 (10/1/17); R. 2786 (10/2/17); R. 2783 (10/23/17); R. 2779 (11/6/17); R. 2776 (1/15/18); R. 2773 (1/22/18); R. 2770 (2/22/18); R. 2767 (3/1/18); R. 2760 (3/22/18); R. 2756 (3/29/18); R. 2764 (4/16/18).

Furthermore, the ALJ assessed medical evidence weighing on both sides of the argument. For example, the ALJ discussed how Plaintiff estimated that he could sit for only 30 minutes at a time and stand for an hour before changing positions. R. 158. The ALJ also delved into Plaintiff's account that multiple procedures failed to correct his condition, noting his medications, injections, previous surgeries, and finally the implanted spinal cord stimulator. R. 158–60.[34] As the record contains more than thirty physicians' opinions, the ALJ accounted for physicians who both found Plaintiff to be disabled and able to work at a greater exertion level than the ALJ determined. The ALJ heavily relied on the physicians with the longest established treatment relationship with Plaintiff, who were also recent treaters, Dr. Redko and Dr. Uzodinma. For the stated reasons, the ALJ did not simply ignore evidence that did not support his decision. *Jefferson,* 356 F.Supp.2d at 675 (reversing when ALJ's discussion omitted conflicting evidence regarding Plaintiff's impairments.).

Further, Plaintiff argues that the ALJ misstated the evidence to find that

---

[34] The ALJ examined Plaintiff's treatment history, beginning with a July 2014 cholecystectomy, following with Plaintiff complained of chronic pain. R. 159. His pain was not relieved, and he underwent endoscopic sphincterotomy in February 2015 and in April 2015, his physicians performed an ERCP. When Plaintiff continued to experience abdominal pain, doctors eventually diagnosed Plaintiff with SOD. R. 159. The ALJ noted that Plaintiff's pain continued even after an exploratory laparotomy with lysis of adhesions, transduodenal bile duct sphincterosplasty, a transduodenal pancreas duct septoplasty, and alcohol celiac nerve block. R. 159. The ALJ observed that it wasn't until Dr. Uzodinma installed the spinal cord stimulator did Plaintiff finally experience significant pain relief. R. 159.

Plaintiff's condition was improving. ECF No. 13 at 9. Although Plaintiff challenges

this assertion,[35] the record contains several physicians opining to his improvements.

As discussed, both treating physicians Dr. Redko[36] and Dr. Uzodinma[37] observed

noticeable improvements throughout the treatment history. In these observations,

both physicians noted improvements with the use of medications, intercostal blocks,

and the spinal cord stimulator. Additionally, Plaintiff himself testified to improved

functionality. Plaintiff reported improved functionality to Dr. Uzodinma,[38] and

---

[35] Plaintiff argues that when the ALJ stated he "experienced significant pain relief with medications, injections, and his spinal cord stimulator," R. 159, the ALJ was misstating the record. ECF No. 13 at 9. Plaintiff argues that a common sense look at the record shows a much different picture. *Id.*

[36] R. 2776 (On 1/15/18, Dr. Redko noted intercostal nerves brought some partial improvement, the implanted spinal cord stimulator provided some partial improvements, the intercostal block provided near complete pain relief, Plaintiff was able to work on current treatment plan, and finally that Plaintiff was improving on current treatment). Dr. Redko copied this sentiment in his following examinations. R. 2773 (1/22/18); R. 2770 (2/22/18); R. 2767 (3/1/18); R. 2760 (3/22/18); R. 2756 (3/29/18); R. 2764 (4/16/18).

[37] R. 2122 (On 1/7/16, Dr. Uzodinma reported that Plaintiff stated his "pain control and activity have improved considerable since the Lorazepam was increased"); R. 2593 (On 2/12/16, Dr. Uzodinma reported Plaintiff's improved functionality and analgesic control on current narcotic-based maintenance medication therapy); R. 56–59 (On 2/21/17, Dr. Uzodinma reported that Plaintiff has improved functionality and analgesic control with current opioid medication therapy); R. 39 (On 4/6/17, Dr. Uzodinma noted that Plaintiff reported 70% improvement with neuropathic intercostal neuralgia pain with spinal cord stimulator trial); R. 24 (On 5/19/17, Dr. Uzodinma stated that "Plaintiff has reported improved functionality, quality of life, and analgesic control with current opioid medication therapy for moderate to severe pain.").

[38] R. 2122 (On 1/7/16, Plaintiff stated his "pain control and activity have improved considerable since the Lorazepam was increased"); R. 2568 (On 7/19/16, Plaintiff reported improved functionality on current medication); R. 39 (On 4/6/17, Plaintiff reported 70% improvement with neuropathic intercostal neuralgia pain with spinal cord stimulator trial); R. 33–39 (On 4/25/17, Plaintiff reported improved functional ability to tolerate a workday without need to standup and walk around frequently to relieve abdominal discomfort); R. 26 (On 5/19/17, Plaintiff reported

testified that he no longer takes medication because he has the spinal cord stimulator, which reduces his pain to a level 3. R. 186–87.[39] Accordingly, substantial evidence supports the ALJ's finding that Plaintiff's condition had improved, and he did not cherry-pick the evidence in making this assertion.

Plaintiff additionally points to several misstatements in the record in which the ALJ cited to the wrong page number, the wrong physician's name, listed the incorrect date, or the wrong procedure. ECF No. 13 at 9–11. But Plaintiff has failed to meet his burden to show that these misstatements would affect his substantial rights. *Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012) (holding that to establish an error warranting remand, a plaintiff bears the burden of demonstrating that it is possible that a different result would occur absent the error). Mistakes in the record will only be the basis for remand if such errors would cast into doubt the existence of substantial evidence to support the ALJ's decision. *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) (affirming ALJ decision when procedural improprieties did not eliminate substantial evidence). Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached

---

improved functionality, quality of life, and analgesic control with current opioid medication therapy for moderate to severe pain.).

[39] At the oral hearing, the ALJ asked Plaintiff, "[i]f you go around normally doing what you do and you got it on, it's working during the day, where are you at?" R. 187. Plaintiff responded, "[i]t depends how long I do something." R. 187. The ALJ rephrased the question and asked, "what generally are you, a 3?" To which Plaintiff responded, "[i]t would say it's a 3 now." R. 187. Plaintiff also testified at the hearing that the spinal cord stimulator was "replacing drugs." R. 187.

absent the error. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (affirming ALJ's decision when error in assessing Plaintiff's credibility would not have affected the outcome of the decision); *Bornette v. Barnhart*, 466 F.Supp.2d 811, 816 (E.D. Tex. 2006) ("error is harmless unless there is reason to believe that remand might lead to a different result.").

Considering the voluminous record, an incorrect page number referencing to a physician's opinion would not conceivably result in a different outcome.[40] Similarly, the ALJ's improper citation to Dr. Uzodinma when it was Dr. Catalano who first diagnosed Plaintiff with intercostal neuralgia would not affect the outcome in the ALJ finding that Plaintiff's condition significantly improved from the onset of his pain. Plaintiff also argues that the ALJ incorrectly stated that Dr. Swamy "conducted a functional capacity examination of [Plaintiff]," R. 159, when he is in fact a consultant who has never personally examined Plaintiff. When assessing the consistency of Dr. Swamy's opinion, the ALJ only afforded it "some weight," finding it to be somewhat supported by medical evidence and consistent with the record as a whole. R. 161. Not giving this opinion great weight, it did not constitute a large factor of the ALJ's analysis. Further, the ALJ does not state any additional

---

[40] *Simon v. Saul*, No. 4:19-cv-3357, 2021 WL 920194, at *4 (S.D. Tex. Jan. 27, 2021) (finding harmless error when ALJ mistakenly stated the incorrect surgery); *Garza Mundy v. Berryhill*, No. 1:18-cv-172, 2019 WL 5269177, at *6 (S.D. Tex. Sept. 12, 2019) (finding harmless error when ALJ failed to consider work history as a factor in the RFC); *Whitaker v. Colvin,* No. H-15-2035, 2017 WL 875290, at *17 (S.D. Tex. Feb. 15, 2017) (finding harmless error when ALJ failed to discuss any hospital record in his decision).

weight was given to this opinion considering him to be an examining physician versus a hired consultant. Therefore, if the Court were to remand the case to reconsider the evidence with clarification of Dr. Swamy's status as a consultant, it is implausible that a different outcome would occur. Finally, Plaintiff adds that the ALJ incorrectly stated that Plaintiff received a radiofrequency ablation. ECF No. 13 at 10. However, in July 2016, Dr. Uzodinma reported that he performed a radiofrequency ablation of several right-side intercostal nerves. R. 8.

Plaintiff has failed to identify a misstatement that casts doubt into the existence of substantial evidence to support the ALJ's decision.

### C. Substantial Evidence Supports the ALJ's RFC.

The RFC analysis is conducted in between steps three and four, at which point Plaintiff maintains the burden of proof to show that he cannot perform the full range of sedentary work. *Grenspan*, 38 F.3d at 237. The Social Security regulations define sedentary work in § 404.1567(a) as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally, and other sedentary criteria are met. 20 C.F.R. § 404.1567.

SSR 83-10 elaborates on the definition of "sedentary work" and explains that "standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour

workday." *Myers*, 238 F.3d at 610.

Plaintiff argues that he cannot perform sedentary work because the biggest difficulty with his impairment is sitting. ECF No. 13 at 11. Plaintiff contends that the ALJ could not have found Plaintiff to be able to perform the full range of sedentary work had the ALJ conducted a proper function-by-function assessment considering all of the evidence. *Id*. at 12–13.

The Fifth Circuit has held that the RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. *Myers*, 238 F.3d at 620 (remanding when ALJ failed to address every function of sedentary work). In his RFC assessment, the ALJ considered the medical opinions of Dr. Redko, Dr. Uzodinma, Dr. Swamy, Dr. Stanfill, Dr. Williams, Dr. Smith, the state agency medical consultants, the medical records, and Plaintiff's testimony. R. 157–61. The ALJ noted Dr. Swamy's functional report, the representative's functional report, the state agency consultant's functional report, and Plaintiff's testimony concerning his functional capacity. *Id*.[41]

---

[41] Dr. Swamy is a medical consultant who reviewed the record and discussed Plaintiff's medical history with Dr. Lehman, a previous treating physician of Plaintiff. R. 2696. The ALJ noted that Dr. Swamy described Plaintiff's pain as "intermittent pain over his chest area." R. 159 (referencing 2701). Additionally, the ALJ noted that Dr. Swamy found no motor dysfunction, normal sensation, and normal gait and opined that Plaintiff "did not appear incapacitated by [his pain]." R. 159 (R. 2701–04). Additionally, Dr. Swamy conducted an RFC for Plaintiff, limiting him to light work. R. 160 (referencing R. 2701–04). Dr. Swamy limited Plaintiff to lifting, carrying, pushing, or pulling up to 25 pounds occasionally and 15 pounds frequently. *Id*. Dr. Swamy also saw no limitations on sitting and standing but allowed Plaintiff to be able to change positions between sitting and standing every 30 minutes. He additionally limited Plaintiff to never kneeling, crawling,

The ALJ reasoned that he found the record supported more limitations than what Dr. Swamy and the state agency consultant granted—both of whom opinioned that Plaintiff could perform at light work. R. 161.

However, the ALJ found that Plaintiff's testimony concerning his functional capacity was not entirely supported by the record considering Plaintiff's daily activities. R. 159[42] (observing that Plaintiff's functional limitations do not

---

or twisting and never driving and operating heavy machinery, occasionally bending, occasionally lifting up to 20 pounds overhead, and no cognitive limitations. *Id*. The ALJ detailed Dr. Swamy's analysis, but only afforded it some weight as he found the record supported additional limitations that reduce Plaintiff to sedentary level of functioning. R. 161.

The ALJ also discussed the functional limitations proffered by Plaintiff's representative, affording it little weight. R. 161. Plaintiff's representative stated Plaintiff must lie down two hours a day; must be off work at least three hours each week for doctor appointments; off take more than 20 percent of the day, and could only perform "simple" tasks. R. 161. The ALJ found the representative's limitations to be inconsistent with the record considering Plaintiff's daily social activities. R. 161. The ALJ also noted that the record did not support a finding of mental limitations that would limit Plaintiff to "simple tasks" or being "off task."

The ALJ also discussed the functional limitations provided by the state agency consultants, who—like Dr. Swamy—found Plaintiff could perform light work. R. 161.

The ALJ noted Plaintiff's testimony at the hearing concerning his functional limitations. R. 158. Plaintiff testified at the hearing to chronic, right sided abdominal pain that feels "like a vise" with numbness in his right arm and leg. R. 158 (referencing R. 185–86) Plaintiff complains that he experiences the most pain with sitting straight up, and standing is preferable. R. 158 (referencing R. 185). Plaintiff estimated that he could sit for 30 minutes and stand for one hour before changing positions. R. 158 (referencing R. 186–87). Further, Plaintiff testified that in the past he could lift his 80-pound dog and lift 100 pounds at work. R. 159 (referencing R. 194). The ALJ reasoned that while medical evidence shows that he is no longer capable of such activity due to pain, it does not show that his limitations completely restrict him from performing all work activity or at the very least sedentary work. R. 159.

[42] The ALJ observed that based on the record, Plaintiff was able to exercise on the treadmill but spends a great deal of time watching Netflix; he engages in numerous daily activities including driving his vehicle, travelling for a week vacation to his parents' ski lodge, travelling to Grand Cayman Island with his wife and parents, and going to University of Texas football games. R. 158.

completely restrict him from engaging in exercise, family, social activities, or vacation travel). The ALJ also discussed the examinations of Dr. Redko, Dr. Uzodinma, and Dr. Smith, all of whom more recently conducted unremarkable examinations, analyzing both mental and physical limitations. R. 160. [43] Based on the medical records, the medical opinions, and Plaintiff's testimony, the ALJ found that Plaintiff's condition had improved with the use of medications and the spinal

---

The ALJ reasoned that Plaintiff's daily activities revealed a significantly greater physical functional ability than alleged and displayed at least a sedentary level of function. R. 158.

[43] The ALJ afforded great weight to the opinions of Dr. Redko, Dr. Uzodinma, and Dr. Smith. R. 159–60. Concerning Dr. Redko, the ALJ discussed his more recent examinations—after the spinal cord stimulator was implanted—in which Dr. Redko opined that Plaintiff could "work with current treatment plan," and his pain was between a 2 and a 6. R. 159 (referencing R. 2641). The ALJ also noted that Dr. Redko examined Plaintiff in March 2018 and noted normal alignment of the spine with adequate range of motion flexion extension and lateral rotation, normal range of motion in the upper and lower extremities, normal strength with no muscle atrophy or wasting throughout, and intact reflexes bilaterally in the upper and lower extremities. R. 160 (referencing R. 2767). Further, the x-ray examinations conducted at this time showed no hip or lumbar pathology. *Id*.

Concerning Dr. Uzodinma, the ALJ discussed his reports from both a pain management perspective and a psychological perspective. The ALJ discussed how Plaintiff's pain decreased with the assistance of the spinal cord stimulator trial performed by Dr. Uzodinma, plus the assistance of medication and some injections. R. 159 (referencing R. 2538). Due to the improvement in pain management, the ALJ noted that Plaintiff reported to Dr. Uzodinma in September 2017 that he was receiving good pain coverage, so much so that he was able to come off of medication. R. 159 (referencing R. 2726–28). The ALJ also discussed Dr. Uzodinma's psychological examination of Plaintiff. R. 160 (referencing R. 2729). The ALJ noted that Dr. Uzodinma observed Plaintiff to have normal affect, mood, behavior, thought content, and judgment. *Id*.

Further, the ALJ discussed Dr. Smith's psychological examination of Plaintiff as well to assess Plaintiff's mental limitations. R. 160 (referencing R. 1988). The ALJ detailed that Dr. Smith, who cleared Plaintiff psychologically for surgery without reservation, found Plaintiff to possess no cognitive impairments. Similar to Dr. Uzodinma, The ALJ afforded this opinion great weight as it revealed no mental impairments, which the ALJ found the record supported.

cord stimulator such that Plaintiff was capable of performing sedentary work.[44] The ALJ properly conducted a function-by-function examination in the RFC analysis.[45] Therefore, substantial evidence supports the ALJ's conclusion that Plaintiff can perform the full range of sedentary work.

## IV.   CONCLUSION

For the reasons stated, the Court ORDERS the following: Plaintiff's motion for summary judgment, ECF NO. 13, is **DENIED**, and Defendant's motion for summary judgment, ECF No. 14, is **GRANTED.** The Commissioner's decision is **AFFIRMED.** This case is **DISMISSED WITH PREJUDICE.**

Signed at Houston, Texas, on June 28, 2021.

_____ *Dena Palermo*
**Dena Hanovice Palermo**
**United States Magistrate Judge**

---

[44] In addition to the records discussed, the ALJ noted that the Dellon Institute for Peripheral Nerve Institute also confirmed that the spinal cord stimulator provided relief. R. 160 (referencing R. 2853–59).

[45] *See Johnson v. Astrue*, 291 F. App'x 548, 551 (5th Cir. 2008) (affirming ALJ's finding that Plaintiff could perform sedentary work despite Plaintiff's need to change positions throughout the day); *Spellman v. Shalala*, 1 F.3d 357, 364–65 (5th Cir. 1993) (affirming ALJ's finding that Plaintiff could perform sedentary work because treating physician's opinion was inconsistent with evidence of Plaintiff's everyday activities); *Libbey v. Astrue*, No. H-09-2004, 2010 WL 2710669, at *8 (S.D. Tex. July 6, 2010) (affirming ALJ's finding that Plaintiff could perform sedentary work when Plaintiff failed to present treating physicians' opinions to contradict findings, and when Plaintiff's daily activities supported the finding); *but see Myers*, 238 F.3d at 621 (reversing ALJ's finding that Plaintiff could perform sedentary work when ALJ disregarded every treating physician's opinion to the contrary and relied solely on the medical consultant who had never examined Plaintiff).